IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TERESA MAGUIRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | FILE No. 5:23-cv-395 |
| FH REDONDO, LP, | ) | |
| d/b/a REDONDO PLACE, | ) | |
| | ) | |
| Defendant(s). | ) | |

## AMENDED COMPLAINT

COMES NOW, TERESA MAGUIRE, by and through the undersigned counsel, and files this, her Complaint against Defendants FH REDONDO, LP, d/b/a REDONDO PLACE, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").  In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq*., based upon Defendants' failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff TERESA MAGUIRE (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in San Antonio, Texas

(Bexar County).

3.     Plaintiff is disabled as defined by the ADA.

4.     Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5.     Plaintiff uses a wheelchair for mobility purposes.

6.     Plaintiff is also an independent advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting her civil rights, monitoring, ensuring, and determining whether places of public accommodation are in compliance with the ADA.  Her motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others, and pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this Property, including returning to the Property as soon as it is accessible ("Advocacy Purposes")."

7.     Defendant FH REDONDO, LP. (hereinafter "REDONDO PLACE") is a for profit limited partnership that transacts business in the state of Texas and within this judicial district.

8.     REDONDO PLACE may be properly served with process through its registered agent, to wit: Fortress Holdings, LLC, 8700 Crownhill Boulevard, Suite 203, San Antonio, Texas 78209.

## **FACTUAL ALLEGATIONS**

9.      On or about August 3, 2022, Plaintiff was a customer at "Wing Daddy's" a business located at 903 E. Bitters Road, San Antonio, Texas 78216, referenced herein as the "Wing Daddy's."

10.     Wing Daddy's is the lessee or sub-lessee of the real property and improvements that are the subject of this action.

11.     REDONDO PLACE is the owner or co-owner of the real property and improvements that the Wing Daddy's is situated upon and that is the subject of this action, referenced herein as the "Property."

12.     Plaintiff lives approximately 4 miles from the Wing Daddy's and Property.

13.     Plaintiff's access to the business(es) located at 903 E. Bitters Road, San Antonio, Texas 78216, Bexar County Property Identification number 1245981 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of her disabilities, and he will be denied and/or limited in the future unless and until Defendant is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Wing Daddy's and Property, including those set forth in this Complaint.

14.     Plaintiff has visited the Property at least once before as a customer and advocate for the disabled.  Plaintiff intends on revisiting the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer, to determine if and when the Property are made accessible and to maintain standing for this lawsuit for

3

Advocacy Purposes.

15.     Plaintiff intends to revisit the Wing Daddy's and Property to purchase goods and/or services.

16.     Plaintiff travelled to the Wing Daddy's and Property as a customer and as an independent advocate for the disabled, encountered or were made aware of the barriers to access at the Wing Daddy's and Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Wing Daddy's and Property.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

17.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

18.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)     historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)     discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)    the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

19.    Congress explicitly stated that the purpose of the ADA was to:

(i)    provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

20.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

21.    The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or

less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

22.    The Wing Daddy's is a public accommodation and service establishment.

23.    The Property is a public accommodation and service establishment.

24.    Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

25.    Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq*.; 28 C.F.R. § 36.508(a).

26.    The Wing Daddy's must be, but is not, in compliance with the ADA and ADAAG.

27.    The Property must be, but is not, in compliance with the ADA and ADAAG.

28.    Plaintiff has attempted to, and has to the extent possible, accessed the Wing Daddy's and the Property in her capacity as a customer of the Wing Daddy's and Property and as an independent advocate for the disabled, but could not fully do so because of her disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Wing Daddy's and Property that preclude and/or limit her access to the Wing Daddy's and Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

29.    Plaintiff intends to visit the Wing Daddy's and Property again in the very

near future as a customer in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Wing Daddy's and Property and as an independent advocate for the disabled, but will be unable to fully do so because of her disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Wing Daddy's and Property that preclude and/or limit her access to the Wing Daddy's and Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

30.     Defendants have discriminated against Plaintiff (and others with disabilities) by denying her access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Wing Daddy's and Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

31.     Defendants will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants are compelled to remove all physical barriers that exist at the Wing Daddy's and Property, including those specifically set forth herein, and make the Wing Daddy's and Property accessible to and usable by Plaintiff and other persons with disabilities.

32.     A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Wing Daddy's and Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations

7

of the Wing Daddy's and Property include, but are not limited to:

**(a)      ACCESSIBLE ELEMENTS:**

(i)   Near Wing Daddy's Sauce House, the access aisle to the accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of section 502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(ii)  Near Wing Daddy's Sauce House, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking spaces in violation of section 406.5 of the 2010 ADAAG Standards.  This violation would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(iii)    Near Wing Daddy's Sauce House, the accessible parking spaces are not level due to the presence of accessible ramp side flares in the accessible parking space in violation of section 502.4 and 406.5 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(iv)    Near Wing Daddy's Sauce House, the accessible parking spaces have a slope in excess of 1:48 in violation of section 502.4 of the 2010 ADAAG standards and is not level. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(v)  Near Unit 313, the access aisle to the accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of section

502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(vi)     Near Unit 313, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking spaces in violation of section 406.5 of the 2010 ADAAG Standards.   This violation would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(vii)    Near Unit 313, the accessible parking spaces and associated access aisle have a slope in excess of 1:48 in violation of section 502.4 of the 2010 ADAAG standards and are not level. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(viii)   Near Unit 313, due to a policy of placing a trashcan in the accessible route coupled with the lack of parking stops so that when a vehicle pulls up all the way the nose of the vehicle extends into the accessible route, there are publicly accessible areas of the Property having accessible routes with clear widths below the minimum 36 (thirty-six) inch requirement as required by section 403.5.1 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access exterior public features of the Property.

(ix)     Near Unit 313, due to a policy of placing a trashcan in the accessible route coupled with the lack of parking stops so that when a vehicle pulls up all the

way the nose of the vehicle extends into the accessible route, the Property lacks an accessible route connecting accessible facilities, accessible elements and/or accessible spaces of the Property in violation of section 206.2.2 and 502.7 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to access public features of the Property.

(x) Near Unit 309, the Property lacks an accessible route from accessible parking spaces to the accessible entrance of the Property, due to the fact that the accessible ramp is not aligned with the access aisle and when a vehicle pulls into the accessible parking space the vehicle itself will block the clear 36 inch accessible route to the ramp, in violation of section 208.3.1 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to access the units of the Property.

(xi)    Near Unit 309, due to the fact that the accessible ramp is not aligned with the access aisle and when a vehicle pulls into the accessible parking space the vehicle itself will block the clear 36 inch accessible route to the ramp, there are publicly accessible areas of the Property having accessible routes with clear widths below the minimum 36 (thirty-six) inch requirement as required by section 403.5.1 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access exterior public features of the Property.

(xii)    Near Unit 308, the walking surfaces of the accessible route have a slope in excess of 1:20 in violation of section 403.3 of the 2010 ADAAG standards.

This violation would make it dangerous and difficult for Plaintiff to access the units of the Property. As the accessible route is in excess of 1:20, it is considered an accessible ramp, moreover, it has a total rise greater than six (6) inches, yet does not have handrails in compliance with section 505 of the 2010 ADAAG standards, this is a violation of section 405.8 of the 2010 ADAAG Standards.  This violation would make it difficult for Plaintiff to access the units of the Property.

(xiii)   Near Unit 308, the accessible ramp has a slope exceeding 1:12 in violation of section 405.2 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access the units of the Property.

(xiv)   Near Unit 304, the walking surfaces of the accessible route have a slope in excess of 1:20 in violation of section 403.3 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access the units of the Property. As the accessible route is in excess of 1:20, it is considered an accessible ramp, moreover, it has a total rise greater than six (6) inches, yet does not have handrails in compliance with section 505 of the 2010 ADAAG standards, this is a violation of section 405.8 of the 2010 ADAAG Standards.  This violation would make it difficult for Plaintiff to access the units of the Property.

(xv)   Due to a failure to maintain the foliage on the Property, the branches of the trees and/or landscaping on the accessible route provided a vertical clearance that is less than the 80 (eighty) inches required by Section 307.4 of the 2010

ADAAG standards. This violation would make it difficult and dangerous for Plaintiff to traverse the accessible routes of the Property.

(xvi)   Near Unit 303, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of section 502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xvii)  Near Unit 303, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of section 406.5 of the 2010 ADAAG Standards.   This violation would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(xviii) Near Unit 303, the access aisle has vertical rises exceeding ¼ inch in height and is in violation of section 303.2 and 502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xix)   Near Unit 303, the accessible parking space has excessive vertical rises in excess of ¼ inch in height, are not level and therefore in violation of Sections 303.2 and 502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xx)    Near Unit 303, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding

1:12 in violation of section 405.2 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access the units of the Property.

(xxi)   Near Unit 303, the accessible ramp side flares have a slope in excess of 1:10 in violation of section 406.3 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access the units of the Property.

(xxii) The Property lacks any accessible parking spaces identified as "van accessible" in violation of section 208.2.4 and 502.6 of the 2010 ADAAG Standards.  There are a total of seven accessible parking spaces on the Property requiring a minimum of two van-accessible parking spaces.

(xxiii) Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

33.   The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Wing Daddy's and Property.

34.   Plaintiff requires an inspection of Wing Daddy's and Property in order to determine all of the discriminatory conditions present at the Wing Daddy's and Property in violation of the ADA.

35.   The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out

without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

36.   All of the violations alleged herein are readily achievable to modify to bring the Wing Daddy's and Property into compliance with the ADA.

37.   Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Wing Daddy's and Property is readily achievable because the nature and cost of the modifications are relatively low.

38.   Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Wing Daddy's and Property is readily achievable because Defendants have the financial resources to make the necessary modifications.

39.   Upon information and good faith belief, the Wing Daddy's and Property have been altered since 2010.

40.   In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

41.   Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Defendants are required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Wing Daddy's and Property, including those alleged herein.

42.   Plaintiff's requested relief serves the public interest.

43.   The benefit to Plaintiff and the public of the relief outweighs any resulting

detriment to Defendants.

44.    Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendants pursuant to 42 U.S.C. §§ 12188 and 12205.

45.    Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendants to modify the Wing Daddy's and Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)    That the Court find REDONDO PLACE in violation of the ADA and ADAAG;

(b)    That the Court find Wing Daddy's in violation of the ADA and ADAAG;

(c)    That the Court issue a permanent injunction enjoining Defendants from continuing their discriminatory practices;

(d)    That the Court issue an Order requiring Defendants to (i) remove the physical barriers to access and (ii) alter the subject Wing Daddy's to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(e)    That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses and costs; and

(f)    That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: March 31, 2023.

Respectfully submitted,

/s/  Dennis R. Kurz
Dennis R. Kurz
*Attorney-in-Charge for Plaintiff*
Texas State Bar ID No. 24068183
Kurz Law Group, LLC
4355 Cobb Parkway, Suite J-285
Atlanta, GA 30339
Tele: (404) 805-2494
Fax: (678) 428-5356
Email: dennis@kurzlawgroup.com